## FEBRUARY TERM, 1868. 117

West Hartford Eccl. Soc. *v.* First Bapt. Church in West Hartford.

## THE WEST HARTFORD ECCLESIASTICAL SOCIETY *vs.* THE FIRST BAPTIST CHURCH IN WEST HARTFORD.

Under the Statute (Gen. Statutes, title 37, sec. 33,) which authorizes proceedings in the Superior Court for the establishment, by a committee appointed by the court, of boundaries that have become lost or uncertain, it is not necessary for the court, by a preliminary hearing, to determine whether there is in fact a lost or uncertain boundary, but this question may properly be referred to the committee with the rest.

The object of the statute was not, by this summary proceeding, to determine the title to land, or settle disputed or uncertain lines between adjoining proprietors, but to restore the marks of dividing lines that have once existed and have been displaced or destroyed or have become obscure.

The action of the court in establishing such lost bounds does not affect the question of title between the parties.

PETITION to the Superior Court in Hartford County for the establishment of a lost boundary between the parties, under the 33d section of the act concerning lands, Gen. Statutes, p. 543. The court, (*Pardee, J.,*) passed a decree establishing a bound fixed and reported by a committee, and the respondents brought the record before this court by motion in error. The points decided will be sufficiently understood without a statement of the facts.

*Barbour*, for the plaintiffs in error.

*T. C. Perkins* and *C. E. Perkins*, for the defendants in error.

HINMAN, C. J. This was a petition to the Superior Court for the restoration of a lost boundary. The statute upon which it was founded provides that, "whenever the boundaries of lands between two or more adjoining proprietors shall have been lost, or by time, accident or any other cause shall have become obscure and uncertain, and the adjoining proprietors cannot agree to establish the same, one or more of said adjoining proprietors may bring his petition in equity to the Su-

perior Court for the county in which such lands, or a portion of them, are situated, and such Superior Court, as a court of equity, may upon such petition order such lost and uncertain bounds to be erected and established." Gen. Statutes, p. 543, sec. 33.

In the case of *Perry* v. *Pratt*, 31 Conn. R., 433, the court held that a lost or uncertain boundary under the statute is a boundary which has lost its distinctive character, as by removal, displacement, decay or change, so that it no longer answers the purpose of a bound defining the true line. The language of the statute gives some color to the claim of the plaintiff in error in this case, that it is the duty of the Superior Court on an application of this character to first determine the question whether in fact there is a lost or obscure boundary within the meaning of the statute, before it can appoint a committee to restore it. But although this question was not directly involved in the case of *Perry* v. *Pratt*, yet it was expressly decided in that case that the court in cases under this statute acts as in ordinary cases in equity, and may review the findings of the committee as in ordinary cases. And if this be so, then it seems to follow, as of course, that the court is not bound first to find that the boundary is lost or has become obscure, within the meaning of the statute, but may refer this and all other questions of fact to the committee as in ordinary cases in equity. And considering the inconvenience of trying a part of the case upon the facts to the court, and another before the committee, we are inclined to think that it was the intention of the statute, that the court should, if it was deemed proper in any case, refer the question as to whether there is in fact a lost boundary to the committee, as well as the question with regard to the restoration of it if found to be lost. We therefore come to the conclusion that there was no error on the part of the Superior Court in referring the whole case to a committee to inquire into the facts alleged in the petition, and to proceed to erect and establish such lost and uncertain boundaries, and report the facts and the doings of the committee to the court.

But this, of course, ought not to deprive the respondents in

the case of the benefit of the question whether there is in fact such a lost or uncertain boundary as is stated in the petition. They have the benefit of that question first at the hearing before the committee ; and if it is found that there is no such lost or uncertain boundary, then the committee should so report, and there will be an end of the case. Or if the committee finds the fact without evidence, or against the evidence, or upon improper evidence, the respondents will have the benefit of it in a remonstrance to the report of the committee. Or if the committee reports all the facts in the case, as appears to have been done in this case, and it appears from those facts that it is not a case of lost boundary, then the court should dismiss the petitioners' bill. And we are of opinion that this is a case of this sort, upon the report of this committee, and that therefore there is error in the decree of the Superior Court in favor of the petitioners. It was not the intention of this statute to withdraw cases relating to the title to land from the ordinary tribunals, assisted as they are in re spect to the finding of facts by a jury. The legislature intended to guard against this abuse of the statute in the first clause of it, which limits the action of the court, as a court of equity under it, to cases where the *boundaries* between adjoining proprietors have been lost, &c. And by boundaries, as here used, is obviously meant the ordinary monuments intended to mark the line between adjoining proprietors. It presupposes that such monuments once existed, and have ceased to exist, or that they have become so obscure as to require the erection of new ones. It was not intended that every uncertain line of division between adjoining proprietors should be definitely fixed by a committee of the Superior Court. Suppose a proprietor had encroached upon an adjoining proprietor for so long a time and under such circumstances that he could not be divested of his possession, no one would claim that he could call upon the court to fix a boundary for him up to the line that he had occupied ; and there is as little reason for claiming that his adjoining proprietor could call upon the court to determine by a committee where the original line

really was, so long as the original monuments which defined that line remained.  The object is not to try the question of title on either side of the line, but to mark the place of the old line where the ancient monuments are gone.

With this view of the object of this statute we think it clearly appears from the report of the committee in this case that the only boundaries which ever existed between these proprietors exist now.  They were a straight line from a corner post erected by the respondents on the north side of the highway, nearly or quite, as the report says, in the line of the present fences between the proprietors, to a merestone.  And this merestone, as we understand the claims of counsel, is the only disputed boundary between the parties.  And this dispute is not in respect to the fact that it was formerly the true boundary between them.  But the real dispute is as to whether the respondents have acquired in any way a title to any part of the land which they all acknowledge once belonged to the petitioners up to the line of this ancient merestone. Under these circumstances it appears to us that, while the true line between these parties may be doubtful or obscure, there is no doubt or obscurity in respect to any monument or other boundary that ever existed between them, and therefore that there was none for the committee to restore.  Had the committee found that the true line between these parties was where the respondents claimed it to be, they could not have erected a monument there under this statute to mark the place of the line, for the plain reason that no monument ever existed at that place, and of course there was none to restore. And had they assumed the right to erect one there, as the true boundary between the parties, they would have been deciding a question of title between the parties rather than restoring a lost boundary ; and the statute does not authorize this.    And their act of re-establishing the ancient merestone as the true boundary ought not to have any more effect in establishing the true line in favor of the petitioners at that place, than a contrary decision would have had in establishing the line where the respondents claimed it.    And this leads us to say that, if the decision of the committee and the

decree of the court were to remain, it ought not to be used, and we think it could not legally be used, to divest the respondents of any title they may in any mode have acquired to any of the land west of that boundary and adjoining it, since they first acquired the title to the land up to that boundary. And in this view of the case, there was nothing for the committee to do under the statute, since the merestone was a plain monument, well known to all the parties in interest, and could not be made more so by the act of the committee establishing it as the boundary between them. It was the title to some portion of the land adjoining this merestone, not the stone itself, that had become obscure, if anything had become so, and this the legislature did not intend should be settled in a proceeding of this sort.

For these reasons we advise the Superior Court that there is manifest error in the decree complained of.

In this opinion the other judges concurred.