## WASHINGTON COMPANY *vs.* CHARLES MATTESON, Trustee.

Public Laws R. I. cap. 453, April 1, 1875, provide, that " whenever the boundaries of public or private ways, or of lands between two or more adjoining proprietors, shall have been lost, or by time, accident, or any other cause shall have become obscure and uncertain, the Supreme Court shall have jurisdiction in equity to ascertain and fix the same " : —

*Held*, that the powers given by this act are broader than those conferred by the general equity jurisdiction of the court.

*Held*, further, that under this act the court simply ascertains a fact, *i. e.* the position of the lost or uncertain bounds.

*Held*, further, that no conclusion of either title or possession follows from such ascertainment of fact.

Where in an indenture of partition a way was given and described partly by reference to terminal bounds: —

*Held*, that this reference to the terminal bounds compelled the inference that at the execution of the deed some such bounds were established.

BILL IN EQUITY to establish the boundaries of a private way. The facts are stated in the opinion of the court.

*Providence, June* 4, 1877. STINESS, J. A private way was granted to the complainant over land of the respondent, in a deed of partition between their predecessors in title, dated September 4, 1830, and was described partly by reference to terminal bounds.

The testimony shows that recent efforts to find these bounds

have proved unavailing, and hence the respondent claims that no bounds ever were, in fact, established, and as none have since been agreed upon, the grant of the right of way is void for uncertainty.

We cannot, however, adopt this inference. The particular reference to "bounds" in the description of the gangway compels the conclusion, that, at the time of the deed, bounds of some sort were established. That these bounds, if established, "have been lost," or "have become obscure and uncertain," is not questioned.

Upon this state of facts the complainant seeks to have the boundaries ascertained and fixed as provided in chapter 453, April 1, 1875, of the Public Laws, which is as follows:—

"Section 1. Whenever the boundaries of public or private ways, or of lands, between two or more adjoining proprietors, shall have been lost, or by time, accident, or any other cause shall have become obscure and uncertain, the Supreme Court shall have jurisdiction in equity to ascertain and fix the same."

Statutes of this character have been adopted in other states. The two principal objections urged against their operation are these: 1st. That they confer no new jurisdiction upon courts in chancery, but are merely, in this class of cases, declaratory of it; 2d. That as the settling of "boundaries" implies the settling of a title, proceedings in equity are in derogation of common law rights and remedies, and hence unconstitutional, by reason of taking away a trial by jury.

In examining these objections we naturally first inquire into the general jurisdiction of a court of equity in such cases.

"The issuing of commissions to ascertain boundaries is certainly a very ancient branch of equity jurisdiction." 1 Story's Eq. Juris. § 610.

Originating possibly in the simple consent of parties who desired to settle and establish doubtful lines, and from that advancing to the granting of a commission upon the application of one party who showed some equitable ground for obtaining it, the exercise of this power, though in later years grudgingly granted in English courts, has been so long continued that it cannot now be questioned.

It has been limited, however, by a long course of decisions, and

" The general rule now adopted is, not to entertain jurisdiction, in cases of confusion of boundaries, upon the ground that the boundaries are in controversy, but to require that there should be some equity superinduced by the act of the parties. 1 Story's Eq. Juris. § 615 ; *Wake* v. *Conyers*, 1 Eden, 331 ; also in 2 Cox, 360 ; *Wetherbee* v. *Dunn*, 36 Cal. 249.

In Pennsylvania an act of April 15, 1858, gave to the Supreme Court in and for the Eastern District and to the Court of Common Pleas of Philadelphia " all and singular the jurisdiction and powers of a court of chancery in all cases of disputed boundaries," &c., and a supplement to the act extended the same to " embrace the ascertainment and adjustment of disputed boundaries between adjoining lands in the county of Philadelphia, where such boundaries are or shall have become confused, or rendered uncertain," &c. In a case arising under these acts, the court held that as their language conferred only " the jurisdiction and powers of a court of chancery " no new powers were given, and these laws, therefore, made no exception to the general rule before stated. *Norris's Appeal,* 64 Pa. St. 275.

It will be observed that the language of the Pennsylvania act is somewhat different from ours, and that the court base their construction of it upon its peculiar words in connection with the question of constitutionality, to which we will presently refer.

Jurisdiction in equity is twofold : it is not only inherent and original, thus adapting itself to the proper requirements of justice and right, but it is also statutory, thus exercising such new powers, and enforcing such new remedies as the legislature may prescribe. Does this statute give any new remedies ?

Without doubt, prior to its passage, we should have been governed by the rule which has been stated. The court would have had jurisdiction in equity of proper cases ; it would have exercised no jurisdiction in cases in which equity did not appear.

Therefore to say that this statute gives jurisdiction only as to cases which, under that rule, would be cognizable in a court of equity, would give to it no effect ; for that jurisdiction the court had before. The terms of the act are broad and not ambiguous. The evident purpose was to give jurisdiction in equity of all cases of lost and uncertain boundaries, or rather to extend it to a class of cases not before included.

The next inquiry is, whether the jurisdiction conferred by this act is in conflict with any common law remedies.

There are many cases in which equity and law have concurrent jurisdiction : such as those in which the law furnishes *some* remedy, but not an *adequate* remedy ; those which may properly be brought at law, but which also have attached to them some peculiar circumstances specially within the authority of equity.

In these cases, generally, where jurisdiction attaches for one purpose it is retained for all purposes. Hence it is that though many, if not most, of the reported cases, both English and American, relating to boundaries, · might, in some way, have been determined at law, they have been tried and disposed of in equity.

Slight circumstances have been recognized as sufficient to determine the jurisdiction in equity : *e. g.* avoiding a multiplicity of suits ; " where one party has ploughed too near the land of the other or the like ; " *Wake* v. *Conyers*, 1 Eden, 331 ; also in 2 Cox, 360 ; gradual encroachment by a defendant, and the filling up of a ditch ; *Boteler* v. *Spelman*, Rep. Temp. Finch, 96 ; neglect of tenant to keep up bounds ; *Aston* v. *Lord Exeter*, 6 Ves. Jun. 288, 292 ; and where a defendant has threatened to remove ten inches of the end wall of the complainant's dwelling-house, which the defendant alleged was on his land. *De Veney* v. *Gallagher*, 20 N. J. Eq. 33.

In the case of the disputed boundary between Rhode Island and Massachusetts, the Supreme Court of the United States, entertaining jurisdiction, laid down in very broad terms the doctrine held by them.

" No court acts differently in deciding on a boundary between states than on lines between separate tracts of land : if there is uncertainty where the line is ; if there is a confusion of boundaries by the nature of interlocking grants, the obliteration of marks, the intermixing of possession under different proprietors, the effects of accident, fraud, or time, or other kindred causes, it is a case appropriate to equity. An issue at law is directed, a commission of boundary awarded ; or, if the court are satisfied without either, they may decree what and where the boundary of a farm, a manor, province, or a state is and shall be." *Rhode Island* v. *Massachusetts*, 12 Pet. 657.

It is apparent from these and other cases that in the exercise of this long established branch of equity jurisdiction no court has considered itself to be encroaching upon the province of the law. While the mere fact that there was a dispute between two parties as to a boundary, one saying it should be here and another there, without more, would not be sufficient to support a bill in equity, yet almost any other circumstance in connection with such dispute has been deemed sufficient.

The reason for this must be that there is no real conflict between the two.

Law and equity do not undertake to do the same things. For instance, in an action of ejectment the ostensible object is not to define the boundaries of the close, but to recover possession ; in doing this it may become necessary incidentally to determine the boundaries, but it is not the purpose of the suit ; in equity the object of the bill is to ascertain and fix the boundaries, without reference to the possession, and without affecting any legal rights that either of the parties may have acquired.

In *Perry* v. *Pratt*, 31 Conn. 433, the court held that " a lost or uncertain boundary is one that has lost its distinctive character, as by removal, displacement, decay, or change, so that it no longer answers the purpose of a bound defining the true line ; " and that the act of 1859 — which is similar to ours — confers a jurisdiction on the Superior Court, as a Court of Equity, to establish such lost bounds, " which is not dependent on the want of adequate remedy at law."

The same court afterwards, in *West Hartford Eccl. Society* v. *The First Baptist Church in West Hartford*, 35 Conn. 117, while expressly recognizing the authority of *Perry* v. *Pratt*, limited somewhat its broad statement as to jurisdiction, by distinguishing between causes properly belonging to the forum of equity and other causes, involving, perhaps, the same questions, but calling for a purely legal remedy. On pages 119 and 120, Hinman, C. J., says : " It was not the intention of this statute to withdraw cases relating to the title to land from the ordinary tribunals, assisted as they are in respect to the finding of facts by a jury. The legislature intended to guard against this abuse of the statute in the first clause of it, which limits the action of the court, as a court of equity, under it, to cases where the *boun-*

*daries* between adjoining proprietors have been lost, &c. And by boundaries, as here used, is obviously meant the ordinary monuments intended to mark the line between adjoining proprietors. It presupposes that such monuments once existed and have ceased to exist, or that they have become so obscure as to require the erection of new ones." . . . . " The object is not to try the question of title on either side of the line, but to mark the place of the old line where the monuments are gone."

Keeping these distinctions in view, while we may admit that a new power is conferred upon the court, namely, that of affording a remedy in a case which, under the general rule in equity, and without the statute, the court could not entertain, because no special equity is set forth in its behalf, it by no means follows that the court in administering such a remedy would at all usurp the prerogatives of the law.

For what remedy could the law afford in the matter of ascertaining boundaries, especially in a case like the present, involving simply a right of way ?. A person in his endeavor to determine the boundaries might become liable in trespass, and thus ascertain where they were *not ;* but we know of no legal remedy that would reach the object aimed at by this act — to replace the boundaries once established, that by them all might be guarded against trespasses and disputes.

*In the Matter of Norris's Appeal*, 64 Pa. St. 275, before cited, the court argued at some length that if the statute should be construed to enlarge the equity jurisdiction of the court it would be unconstitutional, for the reason that it would." draw within the maw of a Court of Equity " all disputed questions of boundary titles, and thus deprive parties of a trial by jury.

We think, however, that the court lost sight of the real purpose of such acts, which is simply to restore lost bounds ; and as we have already seen, if equities are presented, the court has jurisdiction without the statute ; if none are presented, the restoration of a lost bound in no way interferes with common law remedies. The court simply ascertains and establishes an independent fact. It may be asked, of what avail is it to do this if no conclusion follows, as to title or possession ? but this is a question with which we have nothing to do, as it affects the wisdom of the law. The legislature, doubtless, supposed it to be a

wise provision, and we can conceive of many cases where it might serve a useful purpose.

It is urged, however, that " courts of equity will not entertain bills to establish boundary lines when the title to the soil itself is not in question." The act under consideration applies to " ways " as well as to " lands," and, as we think, with equal if not greater propriety.

It is also urged that, as the bounds have become " lost or uncertain," it may be impossible to ascertain their true location. We do not think, however, that we ought to anticipate difficulties of this sort to the extent of refusing the complainant the opportunity to fix their location and make them certain, if he can do so.                                   *Decree accordingly.*

*A. & A. D. Payne,* for complainant.

*Wingate Hayes,* for respondent.

NOTE. — MATTESON, J., did not sit with the court when the above case was heard.