[Filed October 20, 1890.]

LEWIS   LOVE,   RESPONDENT,   *v.*   IDA   MORRILL,   APPELLANT.

DISPUTED BOUNDARY—EQUITY—JURISDICTION OF.—(1) At common law to give a court of equity jurisdiction, in cases of disputed boundary, there must be, first, a dispute as to the boundary; and, second, some equity superinduced by the act of the parties. (2) The act of 1887 (Laws, 1887, p. 53,) was intended to and did give courts of equity jurisdiction in such cases where a mere dispute or controversy exists as to the boundary, without regard to any other equity. (3) Courts of equity have no jurisdiction to try purely legal titles disentangled of any equity. (4) Where in a suit under the statute it appears from the pleadings and evidence the only controversy between the parties is the legal title to a strip of land claimed to have been acquired by adverse possession, the complaint will be dismissed and the parties required to try the legal title at law. (5) Where the facts necessary to give a court of equity jurisdiction are stated in the complaint and are denied by the answer, the question of jurisdiction becomes one of fact to be determined on the hearing and is not waived; and where during the progress of the trial want of jurisdiction appears, it is the duty of the court to dismiss the complaint.

APPEAL from Multnomah county: L. B. STEARNS, judge.

This is a suit to establish the boundary or dividing line between lots 3 and 4, block 116, in the city of Portland, and brought under the act of the legislature "providing a mode of procedure in the matter of ascertaining, determining, establishing and marking boundary lines, where the same are in dispute, between adjacent lands." Laws of 1887, 53. Plaintiff and respondent is the owner of lot 4, and defendant and appellant of lot 3.

The complaint alleges that there is a dispute as to the boundary line between these lots, and describes the location of the line as claimed by plaintiff. The answer denies that there is any dispute as to this boundary line, but sets out what defendant claims to be the correct line, which is the same as the line claimed by plaintiff, except that one of defendant's buildings projects over some sixteen or eighteen inches on a portion of lot 4, and she claims that her line should be so run as to include that

19   545
22   459
24   916
30   162

19   545
23   270
23   296
23   304
24   916
31   602
31   655
31   658

19   545
37   129
38   530

19   545
40   493

19   545
42   565

19   545
47   178

part of lot 4 covered by this building. The answer also alleges title by adverse possession to all that part of lot 4 covered by defendant's buildings, being a strip sixteen inches wide at one end and nineteen inches at the other and about twelve feet long. The reply denies the adverse possession by defendant of this strip of land, and upon this issue the case was tried. There is no dispute, as disclosed by the evidence, between the parties to this suit as to the location of the line dividing lots 3 and 4; nor is there any dispute as to the boundary lines of that portion of lot 4 to which defendant claims to have derived title by adverse possession; but the real and only controversy is as to the title to that portion of lot 4 claimed by defendant.

*M. C. George*, for Respondent,

*Mitchell & Tanner* and *R. R. Giltner*, for Appellants.

BEAN, J., delivered the opinion of the court.

The first question presented in this case is as to whether the act of 1887 applies or was intended to apply to cases of this kind. The determination of this question renders it necessary to first inquire what the common law rule is, and what innovation, if any, has been made therein by the statute in question. Issuing commissions to ascertain lost boundaries was a very ancient branch of equity jurisdiction, and where the boundaries between two adjacent parcels of land had become confused or obscure, equity has from an early period exercised a jurisdiction to settle them. The mere fact, however, that certain boundaries were in controversy was not of itself sufficient to authorize the interference of equity. In addition to the naked confusion of the controverted boundaries, before a court of equity would interfere there must have been suggested some peculiar equity which had arisen from the conduct, situation or relation of the parties. 3 Pomeroy Eq. §§ 1384, 1385; *Wolcott* v. *Robbins*, 26 Conn. 236; *Deveney* v. *Gallagher*, 20 N. J. Eq. 33; 2 Leading Cases in Equity, 318. Tyler on Boundaries, 266, 274; 2 Story's Eq. §§ 616, 621; *Wetherbee* v. *Dunn*, 36 Cal. 249.

Courts of equity would always take cognizance of controversies in respect to boundaries of land where courts of law did not afford adequate relief, or where equitable circumstances were shown calling for the interference of a court of equity. Although, as a rule, unless some statute exists upon the subject, the existence of a controverted boundary was not of itself a ground for relief in equity: other circumstances must be shown which seem to require the interposition of the court. Whenever such circumstances did exist, it may be observed that full and actual possession was sufficient to maintain a suit for settling boundaries. A strict legal title was never inquired into in cases of this kind. This was so declared in *Penn* v. *Lord Baltimore*, 1 Vesey Sen. 44, by Lord Hardwick, many years ago, and the rule has never been changed. Tyler on Boundaries, 266. Courts of equity would not grant relief unless it was shown that without the assistance of the court the boundaries could not be found, and this is the rule now unless changed by statute. Two things were requisite to give the court jurisdiction—first, a controversy as to the boundary, and, second, some equity superinduced by the act of the parties. In *Wake* v. *Congers*, 1 Eden, 331, it was established as a principle, which has been followed and maintained ever since, that the court has no jurisdiction to fix the boundaries of legal estates unless some equity is superinduced by the act of the parties. It was also held in *Godfrey* v. *Little*, 1 R. & M. 59, that a court of equity will not try title to land in a suit to establish boundaries. This question being purely legal, was one for the courts of law, assisted as they are in respect to the findings of fact by a jury. *Penn* v. *Baltimore*, 1 Vesey Sen. 44; Norris, Appeal, 64 Pa. St. 275.

As to what constituted a sufficient equity to give the court jurisdiction in cases of this character, soon became a vexed, uncertain and difficult question, and much conflict exists in the decisions of courts thereon. In this condition of the law the statute of this State was enacted, and was intended, we think, to give a court of equity jurisdiction

in cases where any dispute or controversy exists between two or more owners of adjoining or contiguous lands in this State concerning the boundary lines thereof, without requiring the existence of any other equity. It was intended to simplify the prcceedings in cases of this kind, and to relieve suitors and courts from the difficult task of determining what facts would constitute a sufficient equity to give the court jurisdiction. It is only necessary under this statute that a dispute or controversy exists to give the court, by the aid of a commission, the power to settle and permanently locate or mark out upon the ground the disputed line. It was not the intention of the statute to withdraw cases relating purely to the legal title to land from the ordinary tribunals of law. The establishment of a line under this statute is not deemed to be nor does it acquire validity as a conveyance of a new title, but it simply ascertains and determines the extent of land held under preëxisting titles; in other words, it simply renders certain that which was before uncertain. This seems manifest from the first section of the act, which requires a dispute or controversy to exist concerning the boundary or dividing line, not a dispute or controversy concerning the title, in order to give the court jurisdiction, and also provides that a suit in equity may be maintained for the purpose of having such controversy or dispute determined and such boundary line or lines or dividing lines ascertained and marked by proper monuments upon the ground. The subject matter of the suit is the dispute concerning the lines and not the title, and the court is only authorized to ascertain and determine these lines, leaving all questions of legal title to be determined in the proper forum, unless there exists some equity independent of the controversy about the lines to give a court of equity jurisdiction to try the question of title. Hinman, C. J., in the case of *Ecclesiastical Society* v. *Baptist Church*, 35 Conn. 119, uses the following language, which is peculiarly applicable to the case at bar: "Suppose a proprietor had encroached upon an adjoining proprietor for so long a time and under

such circumstances that he could not be divested of his possession, no one would claim that he could call upon the court to fix the boundary for him up to the line that he had occupied, and there is as little reason for claiming that his adjoining proprietor could call upon the court to determine by a committee where the original line really was so long as the original monuments which defined that line remained." Where the parties claim by adverse titles without any superinduced equity, the remedy is purely at law. 1 Storey's Eq., § 620; *Wethersbee* v. *Dunn*, 36 Cal. 249.

If, under this statute, the court should undertake to determine purely legal titles, when there is no dispute as to the boundary, as was said by Sharswood, J., in Norris Appeals, *supra*, "It would draw within the maw of a court of equity questions of a purely legal character which have heretofore been cheaply and expeditiously settled in courts of law with the necessarily accompanying rights of trial by jury." Under this statute where there is a dispute as to the boundary, a court of equity has jurisdiction to settle and determine the same, but this power cannot be invoked merely to try conflicting titles to land or to usurp the place of ejectment actions at law. The fundamental basis of equity jurisdiction is the want of a full and complete remedy at law, and indeed this is the provision of the statute of this State. 1 Hill's Code, § 380. The right to a trial by jury is guaranteed by the constitution of this State, and the act of 1887 must be read in the light of that provision. If the contention of respondent's counsel is to prevail and the construction suggested by him is adopted, there can scarcely be a limit to the right to have a court of equity adjudicate title to land in dispute between adjoining proprietors. The only question presented in the case at bar is the legal title to that portion of lot 4 covered by the building of defendant. This being a purely legal question, disentangled of any equitable feature, the remedy at law is adequate and complete and should be tried in that form (*Phipps* v. *Kelly*, 12 Or. 213) and does not come within the purview of the act of 1887.

It was, however, insisted, with much learning and ability by counsel for respondent, that defendant had waived the question as to whether a court of equity could try the title to this land by answering to the merits. The complaint is in the form prescribed by statute and states facts sufficient to constitute a cause of suit under its provisions. The answer tendered an issue on the material allegations of the complaint, which could only be determined from the evidence, and if it appears from the evidence that the real dispute between the parties is not cognizable by a court of equity, the complaint should be dismissed. The want of jurisdiction did not and could not have appeared until the evidence was taken, and therefore we fail to see how defendant is precluded from urging this question on the hearing in this court. When the facts necessary to give the court jurisdiction are stated in the complaint and are denied by the answer, the question of jurisdiction becomes one of fact, to be determined on the hearing, and is not waived; and where during the progress of the trial want of jurisdiction appears, it is the duty of the court to dismiss the bill. *Way* v. *Way*, 64 Ill. 406.

Having reached this conclusion, it is unnecessary to discuss the other questions presented in the case, and it follows that plaintiff's complaint must be dismissed. Since we have concluded that plaintiff's remedy is at law and not in equity, his complaint will be dismissed without prejudice.