Statement of the case.

[Argued Nov. 1, 1892; decided Dec. 12, 1892.]

## *A. N. KING *v.* J. R. BRIGHAM ET AL.

[S. C. 31 Pac. Rep. 601; 18 L. R. A. 361.]

1. EQUITY JURISDICTION — LOST OR CONFUSED BOUNDARIES. — The issuing of commissions to ascertain lost or confused boundaries was an ancient branch of equity jurisdiction, and was exercised without any special equitable ground to support it, though it afterward fell into disuse.

2. IDEM — CODE, §§ 506, 510. — The Oregon act of 1887 ( Hill's Code, §§ 506, 510) extends the jurisdiction of equity to cases of confused or uncertain boundary lines where no equitable circumstance was inherent in the controversy; but it does not give courts of equity jurisdiction to determine questions of title: *Love* v. *Morrill,* 19 Or. 545, followed.

3. CODE, § 506 — RIGHT TO TRIAL BY JURY. — The purpose of this act is to authorize courts of equity to ascertain the true boundary line between adjoining estates, and not to try the question of title on either side of that boundary. With this construction the act is not unconstitutional as depriving parties of the right to a trial by jury: Or. Const. art. I. § 17; it is merely a revival of the former equity jurisdiction to ascertain confused boundaries where the question of legal title is not involved.

4. RES JUDICATA — ESTOPPEL. — Where a boundary line has been settled in a former suit, in which the controversy was as to its location, and not as to the title to the strip of land lying between the different lines claimed by the parties, the title to the strip, not being directly in issue, is not adjudicated by the determination of the boundary, and such suit is no bar to a subsequent suit to quiet title to the strip in question.

5. ADVERSE POSSESSION. — Possession or intrusion upon land by mistake in consequence of confusion or uncertainty as to the true boundary, without any intention to claim title beyond the lawful boundary, is not adverse.

Multnomah County: E. D. SHATTUCK, Judge.

Plaintiff appeals. Affirmed.

This was a suit brought by Amos N. King against J. R. Bingham and C. H. Carey (who was substituted for A. D. Tufts), to quiet title. Plaintiff claimed by adverse possession for the statutory period. Defendants denied both plaintiff's title and his adverse possession, and for an affirmative answer pleaded (1) title in themselves by

* NOTE. — This case is also reported in 18 L. R. A. 361, where it is said that the full review of the question of the jurisdiction of equity in cases of boundary contained in the opinion and briefs herein constitutes an unusually valuable summary of the law on this question. — REPORTER.

a chain of conveyances from the United States; (2) adverse possession for ten years; and (3) a prior adjudication of the title to this property in a former suit wherein all the present parties were represented, viz, *King* v. *Brigham et al.* 19 Or. 560 (25 Pac. Rep. 150). The case was referred to John Catlin, Esq., who reported in favor of the defendants on the ground of prior adjudication.

The cause coming on to be heard before Judge SHAT-TUCK in the circuit court, was taken under advisement by him, and a decree was afterward entered affirming the report of the referee and dismissing the plaintiff's suit.

*Francis A. E. Starr* and *Julius C. Moreland ( Killin & Thomas* on the brief), for Appellant.

Adverse possession of real property for the statutory period ripens into a perfect title and becomes a vested right as though evidenced by written title: *Parker* v. *Metzger*, 12 Or. 407; *Joy* v. *Stump*, 14 Or. 361. It must be an occupancy under claim of ownership, though it need not be under color of title: *Swift* v. *Mulkey*, 14 Or. 59.

There must be disseisin, which must be an actual expulsion for the full statutory period: *Springer* v. *Young*, 14 Or. 280. Where a person under a mistake as to the boundaries enters and occupies land not embraced in his title, claiming it as his own for the requisite statutory period, he thereby becomes vested with the title thereto by possession, although the entry and possession may have been founded upon a mistake: *Caufield* v. *Clark*, 17 Or. 473.

The effect of the former judgment as *res judicata* is not limited or enlarged by the reasons given by the court for its rendition: Freeman, Judgm. § 249; *Houston* v. *Williams*, 13 Cal. 24 (73 Am. Dec. 565); *Girardin* v. *Dean*, 49 Tex. 243; *Davis* v. *Millaudon*, 17 La. Ann. 97 (87 Am. Dec. 518).

For a judgment to be final, the subject-matter in controversy must have been brought in question and within the issue in the former proceedings and have terminated

in a regular judgment on the merits: *Aspden* v. *Nixon,* 45 U. S. (4 How.) 467 (11 L. ed. 1059).

It is not sufficient that in a prior proceeding the subject-matter was so involved that it might have been litigated. It must have been at issue and in fact litigated and decided: Freeman Judgm. § 253; *Cromwell* v. *Sac County,* 94 U. S. 351 (24 L. ed. 195); *Davis* v. *Brown,* 94 U. S. 423 (24 L. ed. 204); *Russell* v. *Place,* 94 U. S. 606 (24 L. ed. 214).

In all cases where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined: *Cromwell* v. *Sac County,* 94 U. S. 351. See Freeman Judgm. § 256.

No judgment or decree is evidence in relation to any matter which came collaterally in question or in matters incidentally cognizable, or to be inferred from the judgment by argument or construction: *Lawrence* v. *Hunt,* 10 Wend. 81 (25 Am. Dec. 539); *Jackson* v. *Wood,* 3 Wend. 27; *Wood* v. *Jackson,* 8 Wend. 35 (22 Am. Dec. 603); *Hopkins* v. *Lee,* 19 U. S. (6 Wheat.) 109 (5 L. ed. 218); *Lewis & Nelson's App.* 67 Pa. 165; *Howard* v. *Kimball,* 65 Me. 308; *Hamner* v. *Pounds,* 57 Ala. 348; *Land* v. *Keirn,* 52 Miss. 341; *Henry* v. *Davis,* 13 W. Va. 230.

*Richard Williams* and *Chas. H. Carey (Emmett B. Williams* on the brief), for Respondents.

Mr. King's title by possession to one or the other of the two lines in controversy in the former suit was a matter involved in the issues set forth in the pleadings; evidence was directed to this point upon the trial, and was received and considered by the court, and the conclusion of the referee, the circuit court, and the supreme court was based upon that issue and that evidence. That question was finally and completely determined and set-

tled, and is now *res adjudicata* between these parties.   An adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have decided as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense: Freeman, Judgm. § 249 ; Herman, Estoppel, § 411 ; *Rogers* v. *Higgins,* 57 Ill. 246 ; *Harmon* v. *Auditor of Public Accounts,* 123 Ill. 122 (13 N. E. Rep. 161); *Glenn* v. *Savage,* 14 Or. 573 ; *Barrett* v. *Failing,* 8 Or. 152.   The question is, Did it decide, and is the decision final ?   *Chouteau* v. *Gibson,* 76 Mo. 49 ; *Hurst* v. *Combs,* 12 Ky. L. Rep. 385 (14 S. W. Rep. 379).

The same facts cannot be the basis of a second action between the same parties arising out of the same transaction, though in the former action the facts were pleaded as a defense only, and no claim was made thereon for affirmative relief:   *Bierer* v. *Fretz,* 37 Kan. 27.

A proposition assumed or decided by the court to be true, and which must be so assumed or decided in order to establish another proposition which expresses the conclusion of the court, is as effectually passed upon and settled in that court as the very matter directly decided: *Warren Co. School Dist. Trustees* v. *Stocker,* 42 N. J. L. 117.

The statement of the case and opinion of the court are admissible to show the ground upon which a decree was rendered:   *Hood* v. *Hood,* 110 Mass. 463; *Laird* v. *De Soto,* 32 Fed. Rep. 652; *Le Grand* v. *Rixey,* 83 Va. 862; *Glenn* v. *Savage,* 14 Or. 573.

An equitable suit to settle and establish boundaries falls within that class that equity assumes jurisdiction of concurrently with law.   And it is an example of those few suits in which equity, in administering relief, awards possession of the land in controversy as a law court would do:   Pom. Eq. Jur. § 180.   Equity jurisdiction embraces consideration of legal questions involved in a settlement of boundaries; the suit in its very nature

involves a trial of the right of possession to the line. Unless the contestants can show title to the line they cannot prevail. Such is the inherent nature of the suit as shown by an examination of its history from the beginning: Story, Eq. Jur. § 616, citing *Wake* v. *Conyers*, 1 Eden, 331; 2 Cox, Ch. 360.

In order to sustain a bill for a commission to ascertain boundaries, the plaintiff must establish, by the admission of the defendant, or by the evidence, a clear legal title to some land in the possession of the defendant, and also some ground for equitable relief: *Godfrey* v. *Little*, 1 Russ. & M. 59, 2 Russ. & M. 630. See also *Perry* v. *Pratt*, 31 Conn. 433; *Cushing* v. *Miller*, 62 N. H. 517; *Fraley* v. *Peters*, 12 Bush, 470.

The exercise of equitable jurisdiction in boundary cases, where the final relief granted is substantially a recovery or obtaining possession of specific portions of land, is a matter of ordinary occurrence in suits for the adjustment of disputed boundaries, where some equitable incident or feature is involved and the dispute is not wholly confined to an assertion of mere conflicting legal titles or possessory rights: 1 Pom. Eq. Jur. §§ 174, 180, 185; 3 Pom. Eq. Jur. §§ 1378–1385. See Bigelow's *note* to Story, Eq. Jur. 13th ed. pp. 78–81.

If equity took cognizance of the case at all, it is folly to urge that it should drop the controversy without fully settling the issues: *Wilhelm's App.* 79 Pa. 120; Pom. Eq. Jur. § 181; *Heatherly* v. *Hadley*, 4 Or. 1; *Howe* v. *Taylor*, 6 Or. 284; *Phipps* v. *Kelly*, 12 Or. 213.

Granting that the circuit and supreme courts passed upon the question of adverse possession in the King case, the determination is final even though erroneous, if the court therein assumed an authority as a court of equity to try an issue which was strictly legal and properly cognizable only by a court of law; still, although it exceeded its jurisdiction as a court of equity in one sense, the question was not *coram non judice* nor its findings void: 1 Pom. Eq. Jur. § 129; *Cumming* v. *Brooklyn*, 11 Paige,

596 (5 L. ed. 246); *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 574 (5 L. ed. 998; 49 Am. Dec. 189); *Amis* v. *Myers*, 57 U. S. (16 How.) 492 (14 L. ed. 1029); *Sexton* v. *Pike*, 13 Ark. 193; *Creely* v. *Bay State Brick Co.* 103 Mass. 514; *Baker* v. *Woodward*, 12 Or. 21; *Kitcherside* v. *Myers*, 10 Or. 21.

Even if the supreme court were wrong in considering the question of possession, this is hardly the time or the place to reverse the decision or raise the question: *Morrill* v. *Morrill*, 20 Or. 102 (11 L. R. A. 155); *Crabill* v. *Crabill*, 22 Or. 558 (30 Pac. Rep. 231).

King's possession to the Burrage line under a mistake could not ripen into title, for there was no claim of ownership: *Caufield* v. *Clark*, 17 Or. 473; *Howard* v. *Reedy*, 29 Ga. 152 (74 Am. Dec. 58); *Brown* v. *Cockerell*, 33 Ala. 45. Taking plaintiff's own statement as true, his case is that set forth in *Worcester* v. *Lord*, 56 Me. 271 (96 Am. Dec. 456), where the court held that such facts did not prove title to the strip.  See also 3 Washb. Real Prop. 5th ed. 172, 173; *Dow* v. *McKenney*, 64 Me. 138; *St. Louis University* v. *McCune*, 28 Mo. 482; *Lincoln* v. *Edgecomb*, 31 Me. 345; *Schad* v. *Sharp*, 95 Mo. 573; *Finch* v. *Ullman*, 105 Mo. 255; *Crawford* v. *Ahrnes*, 103 Mo. 88; *Hockmoth* v. *Des Grand Champs*, 71 Mich. 520 (39 N. W. Rep. 737); *Wacha* v. *Brown*, 78 Iowa, 432; *Bewley* v. *Chapman*, 16 Or. 402; *Caufield* v. *Clark*, 17 Or. 473.

The possession was not hostile nor the claim notorious: *Hicklin* v. *McClear*, 18 Or. 140; Wood, Limitations, pp. 510, 511, 539; *Comegys* v. *Carley*, 3 Watts, 280 (27 Am. Dec. 356).

Building a rude fence is held to be insufficient to oust the true owner, unless there be proof of actual notice to him that the possession is with intention to claim the land adversely.  The decisions are uniform that where a party claims a right to land by virtue of his adverse possession, without deed, or any paper title, he is restricted to so much as he has had in actual possession by substantial enclosures and by cultivation and residence for the full statutory period.  He can claim nothing by

construction or presumption: *Hicklin* v. *McClear*, 18 Or. 140; *Coburn* v. *Hollis*, 3 Met. 125; *Jackson* v. *Schoonmaker*, 2 Johns. 230; *Dem* v. *Hunt*, 20 N. J. L. 487; *Hale* v. *Glidden*, 10 N. H. 397; *Smith* v. *Hosmer*, 7 N. H. 436 (28 Am. Dec. 354); *Hutton* v. *Schumaker*, 21 Cal. 453; *Borel* v. *Rollins*, 30 Cal. 415; *Worcester* v. *Lord*, 56 Me. 265 (96 Am. Dec. 456); *Hockmoth* v. *Des Grand Champs*, 71 Mich. 520 (39 N. W. Rep. 737); 3 Washb. Real Prop. 5th ed. 145.

LORD, C. J. — This is a suit by Amos N. King against J. R. Brigham and C. H. Carey to quiet title to the strip of land lying immediately east of the eastern boundary of the plaintiff's donation land claim as established by this court in the suit of *A. N. King* v. *Brigham et al.* 19 Or. 560 (25 Pac. Rep. 150), and within the contiguous donation land claim of one Lownsdale, in the city of Portland. The complaint alleges that the plaintiff has had adverse possession of the premises for ten years last past, and that the defendants wrongfully claim an interest in the same. . The answer denies that the plaintiff is, or has been, in possession of the premises in controversy, and denies that the defendants wrongfully claim an interest or estate therein adverse to the plaintiff, but admits that they claim to own the same in fee simple adversely to the plaintiff and all others. And for a further and separate answer, the defendants plead in effect that the plaintiff ought to be estopped from alleging or claiming that he is the owner, or in possession, of the real property described in the complaint, or from maintaining this suit, because of a suit brought by the plaintiff and the North Pacific Industrial Association, as plaintiffs, against these and other defendants, to settle the boundary line between the lands owned by the plaintiff and the defendants, and which is the same line as that described as the westerly boundary of the tract mentioned in the complaint, etc.; and that in said suit it was determined and decreed that the boundary line between the plaintiff's and defendants' land was a certain described line (a por- '

tion of which is the same line mentioned in the complaint
as the western boundary therein described, etc.), and that
it was further ordered that the said suit be remanded to
the court below with directions to appoint commission-
ers as by law provided to locate and mark out the line
as determined by the court, etc. And for a further and
separate answer, the defendants allege that they are the
owners in fee simple of the tract of land in controversy
by a chain of conveyances from the United States and
others, and that they are in possession of the same and
the whole thereof. And for another defense, the defend-
ants allege the adverse possession of themselves and
their predecessors in title for a period of ten years, etc.
The reply denies the new matter set forth in the answer.

Upon these issues the case was referred to a referee,
who, in substance, found that the plaintiff has been in
the continuous possession, and claimed to be the owner,
of the property in dispute for a period of more than ten
years, and that the defendants, nor either of them, have
been in the open and continuous possession of the same
for a period of ten years; but that the facts set up in this
suit were fully heard and determined in the said suit
wherein the plaintiff and the North Pacific Industrial
Association were plaintiffs and J. R. Brigham and others
were defendants, and that the supreme court by its
decision and decree (19 Or. 560) established the line
between the plaintiff's and said defendants' lands in that
suit; and that the plaintiff King did not own the land in
controversy; and as a conclusion of law, that the plain-
tiff is now estopped from claiming the land described in
his complaint, and that the suit should be dismissed.
Subsequently, upon proper proceedings had and taken, a
decree was entered affirming the report of the referee
and dismissing plaintiff's suit. From this decree the
plaintiff has appealed.

The contention for the plaintiff is, that the decree
rendered in the former suit between these parties is no
bar to the present suit to quiet title to the land in con-

troversy.   While it is admitted that the defendants set
up as a defense in a former suit adverse possession of
the land for the statutory period, and that issue was
joined and evidence taken upon it and reported to the
court, nevertheless it is insisted that such matter was
outside of the jurisdiction of the court, since it affected
title, and consequently that no valid decree could be
founded on it; and further, that such matter as a defense
was not considered by the court, as its decree simply de-
termined the location of the disputed line and directed
the appointment of viewers to locate the same by proper
monuments upon the ground.   This view is based on the
fact that the decree in the former suit merely determined
the boundary line between the adjoining lands of the
plaintiff and the defendants, reïnforced by the assump-
tion that the act of the legislature of 1887, giving to
courts of equity jurisdiction to try cases where a dispute
exists between owners of adjoining lands concerning the
boundaries thereof, as construed in *Love* v. *Morrill*, 19 Or.
545 (24 Pac. Rep. 916), limits and confines such jurisdic-
tion to the ascertainment and location of the boundary
lines, and cannot be extended to the determination of
title.   The question raised is important, and involves
some considerations in respect to the jurisdiction con-
ferred by the statute that require further explanation.

1.   The issuing of commissions to ascertain lost bound-
aries, or boundaries which, from accident or other cause,
have become confused, uncertain, or obscure, is an an-
cient branch of equity jurisdiction, the origin of which
cannot be ascertained with exactness, and still remains
uncertain and conjectural; but the books show there are
cases in which the court has granted commissions, or
directed issues on no other apparent ground than that
the boundaries between contiguous lands were in contro-
versy from the fact of their being confused or incapable
of being distinguished with any certainty.   It appears,
however, that it is a jurisdiction which has been spar-
ingly exercised and watched with jealousy, and of late

years has not been favored or exercised unless some
equitable circumstances are shown to sustain it: Story,
Eq. Jur. § 609 *et seq.*; Bispham, Eq. 552; Pomeroy, Eq. Jur.
§§ 1384, 1385; Tyler, Boundaries, 259.  In *Speer* v. *Craw-
ter*, 2 Merivale, 417, the master of rolls criticised the ex-
ercise of such jurisdiction without some equitable ground
to support it, asking, "On what principle can a court of
equity interfere between two independent proprietors,
and force one of them to have his rights tried and deter-
mined in any other than the ordinary legal mode in which
questions of property are tried?" In some cases, cer-
tainly, the court has granted commissions, or directed
issues on no other apparent ground than that the bound-
aries of manors were in controversy.

In *Wake* v. *Congers*, 2 Cox, 360, however, Lord NORTH-
INGTON held that it was in the case of manors that the
exercise of the jurisdiction, 'which had been assumed of
late,' was peculiarly objectionable.  He refused either to
grant a commission, or to direct an issue.  So did Lord
THURLOW in the case of two parishes: *St. Luke's* v. *St.
Leonard's*, 2 Anstr, 386, 395.  In the same case of *Wake*
v. *Congers*, Lord NORTHINGTON says that in his appre-
hension "this court has simply no jurisdiction to settle
the boundaries even of land, unless some equity is super-
induced by the act of the parties." I concur in that
opinion, and think that the circumstance of a confusion
of boundaries furnishes, *per se*, no ground for the inter-
position of the court.  And the general rule now adopted
is, not to entertain jurisdiction in cases of confusion of
boundaries, upon the ground that the boundaries are in
controversy, but to require that there should be some
equity superinduced by the act of the parties: Story, Eq.
Jur. § 615, and note of authorities.  Now the equity for
the ascertainment of boundary arises, according to the
chancery jurisdiction, when the boundaries between the
owners of adjoining estates have been confused by the
misconduct of the defendant, or those under whom he
claims.  The mere confusion will not create it; for the

fact that a man cannot ascertain his property does not constitute an equity against another person: *Speer* v. *Crawter*, 2 Merivale, 417. Hence courts of equity have no jurisdiction to try cases for the ascertainment of boundary, unless some equity is superinduced by the act of the defendant; otherwise they are triable in the ordinary course of law with the assistance of a jury, within the rule that equity will not interfere where there is an adequate remedy at law. From this it is apparent that originally there was no jurisdiction in equity of mere questions of boundary, but there was jurisdiction where there was a confusion of boundaries, only it did not extend to every dispute as to boundary, because in such cases the law generally affords ample remedy. As a consequence, before equity would intervene to fix the boundary between two adjacent estates which had become obscure and controverted, there must have been some equitable ground attaching itself to the controversy, such as fraud on the part of the defendant by which a confusion of the boundary has been produced; or there must have been some relation between the parties which made it the duty of one of them to preserve and protect the boundary; or it must have been necessary to prevent a multiplicity of suits; or to prevent mischief otherwise irremediable: Story, Eq. Jur. §§ 619–621.

2. As cases of disputed boundary lines between the lands of adjacent owners are matters which concern legal estates, and are ordinarily settled in courts of law, there seems to be an impression in the profession that the Oregon statute of 1887 (Code, §§ 506–510), in conferring jurisdiction upon a court of equity to try all cases where a dispute exists as to the boundary lines of adjoining lands, and requiring each of the parties to designate such boundary line as he shall claim it to be, permits the recovery of the strip of land embraced between the lines as designated by the parties, and that necessarily the title acquired by adverse possession may be set up by the de-

fendant to establish such boundary line as he designates and claims it.

In the case of *Love* v. *Morrill*, 19 Or. 545 (24 Pac. Rep. 916), where this statute was first considered, neither the pleadings nor the facts disclosed any dispute as to the boundary line, except that the defendant claimed title by adverse possession to that portion of the land covered by her building, which projected over their boundary line, in consequence of which she claimed that the line should be so located as to include it. As the case was brought under the statute, and presented simply the pure legal question of the title to that portion of the land covered by the building of the defendant, it became important and necessary to ascertain the nature and extent of the jurisdiction conferred; for if such a suit could be maintained under it, nothing was plainer than that this jurisdiction might be exerted to usurp the place of an action at law to recover real property, and thereby deprive the defendant of his constitutional right to trial by jury. With these considerations in view, the court proceeded to construe the statute, and held that courts of equity were invested with jurisdiction to try cases where a dispute exists between the owners of adjoining lands concerning the boundary line or lines thereof, without any equitable grounds, or equity superinduced by the act of the parties to sustain it, but that such jurisdiction could not be extended to determine title to real property, or usurp the place of an action at law to recover real property; that the object of the jurisdiction conferred by the statute was to ascertain the true boundary between the lands of adjacent owners which had become confused, or unknown, or lost, the subject-matter of such jurisdiction or suit being the dispute concerning the boundary line, and not the title; and as a consequence, that within the purview of the statute, the Love-Morrill suit could not be maintained.

It is true that disputes in respect to the boundaries of adjacent proprietors of land is ordinarily of legal cogniz-

ance, and that the statute on its face seemingly indicates an intention to oust the jurisdiction at law for the trial of such cases; but when the statute declares in effect that a suit may be maintained in equity where a controversy exists between the owners of adjacent lands as to the location of the boundary line, it is not meant that a suit may be maintained when the dispute between them concerning such boundary line involves the determination of title, as where each owner claiming a different line as the true boundary line of the adjacent lands seeks to recover or establish title to the strip embraced between such lines. The distinction is between cases which are prosecuted with the ostensible object of determining the true boundary line between the parties and those brought to recover lands claimed by the defendant to be embraced within his boundary line as against the line claimed by the plaintiff.

Our statute (§§ 506–510) is predicated upon the idea that whenever a controversy exists, arising from a confusion of boundaries between the owners of adjoining lands, it is necessary, in order to put an end to such controversy, that equity should intervene and ascertain the true boundary between such estates. Under this statute the jurisdiction of equity is extended to a class of cases of disputed boundary where no equitable circumstance attaches itself to the controversy. Under it a court of equity may intervene in any case in which title is not involved, where the boundary is confused or obscure, and a controversy exists between the owners of the adjacent lands, to ascertain such boundary and fix its location. It is of no consequence, to sustain such jurisdiction, that the confusion of the boundary about which the controversy exists was not occasioned by the fraud or misconduct of the defendant, but was the result of accident or lapse of time, or was produced by natural causes, or the like — it is enough that a controversy exists concerning the boundary, which is uncertain or obscure and needs to be ascertained and located. In such case, either party

may bring a suit in equity in which each may designate the boundary as he claims it; but within the purview of the statute the suit is not brought to affect pre·existing titles, but only to establish or restore the true boundary line between the adjacent estates. ·

As BEAN, J., said in *Love* v. *Morrill*, 19 Or. 545, "The subject matter of the suit is the dispute concerning the lines, and not the title, and the court is only authorized to determine these lines, leaving all questions of legal title to be determined in the proper forum, unless there exists some equity independent of the controversy about the lines to give a court of equity jurisdiction to try the question of title." The object of the suit, therefore, is to ascertain the true boundary line between the contiguous estates, and not to try the question of title on either side of the boundary. It follows, then, that the statute does not undertake to transfer to the jurisdiction of equity cases of disputed boundary which involve questions of title, and belong to the common law jurisdiction. A statute of that kind would be clearly subject to the objection of violating the constitutional right of the defendant to a trial by jury; but the statute does give jurisdiction to try cases of disputed boundary between the owners of adjoining lands arising from other causes than an equity superinduced by the act of the parties. In other words, it has extended the jurisdiction of equity to a class of cases not of late years (although they may have been originally) embraced within that jurisdiction, because there was an adequate remedy at law.

3. The important question then arises—in view of the provision of our constitution, which provides that "In all civil cases, the right of trial by jury shall remain inviolate" (section 17. article I.)—whether the legislature can confer jurisdiction upon a court of equity to try and determine controversies in respect to disputed boundary between independent proprietors of. adjoining estates, where no equity has been superinduced by the act of the

defendant, as has been done by the statute, without transcending the limits of the constitution.

By an act of the legislature of the state of Pennsylvania, there is conferred upon the supreme court and the court of common pleas, all and singular, "the jurisdiction and powers of a court of chancery in all cases of disputed boundary between adjoining lands," etc.; and by a supplement to the act, it is declared "that the jurisdiction and powers given by the act, etc., shall extend to and embrace the ascertainment and adjustment of disputed boundaries between adjoining lands, etc., where such boundaries are, or shall have become, confused or rendered uncertain, either by lapse of time, by natural causes, or by the act, neglect, or default of any present or former occupant thereof." It will be noticed that the act confers jurisdiction to try other cases of disputed boundary than those where the confusion was produced by the misconduct of the defendant. The constitution of that state provides that "trial by jury shall be as heretofore, and the right thereof remain inviolate."

In *Norris' Appeal,* 64 Penn. St. 279, no special equity affecting the defendant, or any other ground of equitable interposition, was alleged or pretended; and it was conceded that within the rule of chancery jurisdiction, a mere dispute as to the dividing line of two adjoining estates, not held under the same title, where there is no special equity affecting the defendant, would not give jurisdiction; and the court held that the acts of the legislature must be confined to cases which are properly the subject of equitable jurisdiction; and, consequently, that the plaintiff must be remanded to his legal remedies, as the case did not come within the jurisdiction of chancery to fix the boundaries of legal estates unless some equity is superinduced by the act of the parties. SHARSWOOD, J., examined the constitutional question at some length, and presented some strong arguments adverse to its constitutionality; but in consideration of the fact that such a construction could be given to the acts as would not con-

flict with the constitution, by confining them in their true intendment to cases which are properly the subject of equitable jurisdiction, he sustained the constitutionality of the act.   It follows from this argument, that an act of the legislature authorizing a court of equity to ascertain or determine controversies as to boundaries, where no equity has been superinduced by the act of the parties, would be invalid as transcending the limits which the constitution prescribes.   In so far as our statute undertakes to confer jurisdiction to try cases in equity, of disputed boundary, between the owners of legal estates, where no special equity exists to sustain such jurisdiction, it is vulnerable to this objection, unless we construe the statute as only intended to apply to cases which are properly the subject of equitable jurisdiction.   This we cannot do without violating the plain intendment of the statute as construed in *Love* v. *Morrill, supra,* and as accepted and applied to other cases.

Other states besides our own have passed statutes providing for special tribunals, or conferring jurisdiction upon courts of equity to ascertain or fix the boundary line between the owners of adjoining lands or the boundary line between adjoining towns: Tyler, Bound. 244, 256. The Connecticut statute is based on a proceeding in equity brought in the superior court to ascertain and fix lost or uncertain boundaries, and extends such jurisdiction to many cases which it would not embrace without the statute; and in construing such statutes, it was held that the jurisdiction conferred upon the court in respect to ascertaining such boundaries, was not dependent on a want of an adequate remedy at law :   Conn. Gen. Stat. 543, § 33;   *Perry* v. *Pratt*, 31 Conn. 434.   This is contrary to the rule that unless there is some special equity to sustain such jurisdiction, the remedy at law must prevail, and renders the statute equally vulnerable to the constitutional objection of depriving the defendant of the right of trial by jury, unless the opinion expressed by the court, that "the issuing of commissions to ascertain

boundaries is a very ancient branch of equity jurispru-
dence, and that there can be no doubt that our statute
conferring jurisdiction upon the superior court is broad
enough to embrace that branch, as well as every other,"
may be considered as a valid ground for the exercise of
equitable interposition in such cases.   The principle ap-
plied in the construction of the statute, and the object it
was intended to serve, alike applies to the construction
and object of our statute as illustrated in *Love* v. *Morrill,*
*supra.*

In *West Hartford, etc.,* v. *The First Baptist Church, etc.,*
35 Conn. 120, HINDMAN, C. J., after repeating the lan-
guage of the statute, and referring to the case of *Perry*
v. *Pratt,* 31 Conn., said: "It was not the intention of this
statute to withdraw cases relating to the title to land
from the ordinary tribunals, assisted as they are in
respect to the finding of facts by a jury.   The legislature
intended to guard against this abuse of the statute in the
first clause of it, which limits the action of the court as a
court of equity under it to the cases where the *boundaries*
between adjoining proprietors have been lost, etc.   It
presupposes that such monuments once existed and have
ceased to exist, or that they have become so obscure as
to require the erection of new ones.   It was not intended
that every uncertain line of division between adjoining
proprietors should be definitely fixed by a committee of
the superior court.   Suppose a proprietor had encroached
upon an adjoining proprietor for so long a time and under
such circumstances that he could not be divested of his
possessions: no one would claim that he could call upon
the court to fix a boundary for him up to the line he had
occupied; and there is little reason for claiming that his
adjoining proprietor could call upon the court to deter-
mine by a committee where the original line really was
so long as the original monuments that defined that line
remained.   The object is not to try the question of title
on either side of the line, but to mark the place of the old
line where the ancient monuments are gone."   Some

other cases might be cited within the purview of this decision, and those cases in which jurisdiction was formerly exercised on no other apparent ground than a confusion of boundary.

Within the purview of the principles announced, without further reference. the jurisdiction conferred by our statute may be well maintained as a valid exercise of power for ascertaining the true boundary lines between adjacent estates which have become confused or uncertain, and do not involve the determination of legal title, although it would have been as well, or perhaps more in harmony with the chancery practice as it now exists, if the statute would have borne such a construction, to have confined its operation to cases which are properly the subject of equitable jurisdiction. It may be true in those cases where jurisdiction is acquired by some equity arising between the parties, or superinduced by the wrongful conduct of the defendant in obliterating the lines or destroying the monuments upon which the evidence of such boundary depends, that a suit in equity, although brought for ascertaining and fixing the boundary between adjacent estates, may involve the determination of conflicting titles or possessory rights; yet when such is the case a court of equity is competent to administer full and complete relief, and if necessary to grant the same kind of relief as that given at law. In such case the decree might operate as an estoppel and a bar in respect to the title involved and litigated. But there is a clear distinction between a dispute about the title to lands and a dispute about boundary lines. It is the confounding of these two questions, or regarding them as identical, that has sometimes mislead parties in seeking their remedies.

4. In the previous suit between these parties, the question determined was, not title, but the boundary line between the King and Lownsdale claims. In that case, the confusion of the boundary was occasioned by the displacement, from natural causes, of the tree or monument at the northeast corner of the King claim. It appears

that the initial point of the King claim was undisputed, but if the monument at the northeast corner of the claim, as actually located, could be ascertained, the boundary line in dispute would be a straight line. In the former suit the plaintiff designated and claimed a certain line to be the boundary, which the defendants denied, and claimed another and different line to be the boundary of these adjoining lands. It is true that the defendants set up as a separate defense, title by adverse possession, which the plaintiff denied, but the court properly ignored its consideration and confined the jurisdiction to ascertaining and locating the boundary in dispute. It is clear, then, that the case not only related merely to the question of boundary, but that within the purview of the statute it did not nor could it extend to title. The title of the plaintiff to his land, and the title of the defendants to their land to the boundary — wherever that was — between the adjacent estates, stood conceded, and the only question sought to be litigated was as to the true location of such boundary. Upon the evidence submitted, the court ascertained that the boundary line in dispute was the line claimed by the defendants and not the one designated by the plaintiff, and directed the same to be located as the boundary between their lands; whereupon the plaintiff has brought this suit to quiet his title to the strip of land included between the boundary line as he claimed it, and the boundary line as the defendants claimed it, in the former suit, alleging that he has acquired title to it by adverse possession, which the defendants deny, and, among other grounds, seek to defeat the case by pleading the decree in the former suit as an estoppel.

To give a decree in a former suit the effect of an estoppel in the present suit, the title to the strip in question must have been directly in issue and determined. The rule is elementary that the estoppel only extends to the question directly involved in the issue, and not to any incidental or collateral matter which may have arisen. To ascertain whether a former judgment or decree is a

bar to present litigation, the test is, was the same right or title put directly in issue and determined. Plainly, upon the principles already stated, the court had no jurisdiction to try title to the strip in question, nor was it tried, as the decree plainly indicates. The controversy was as to the true location of the line, and not the title to the strip of land lying between the different lines alleged by the parties, and consequently the title to it not being in issue, was not adjudicated, and cannot operate as an estoppel or bar to the present suit.

5.   In the former case, the evidence of the plaintiff was directed to showing that the location of the line was as he alleged it, and in the present case to showing adverse possession by occupancy to the same line; and necessarily his evidence covers a great deal of the same ground in this as in that. In the former suit, to the suggestion that the plaintiff had acquired title by adverse possession, the court said that "the evidence shows that Mr. King held this possession, if at all, under mistake or ignorance as to his true line, and with no intention to claim beyond the true line when discovered," indicating that, in the opinion of the court, his evidence was not susceptible of that effect, and that it was consistent with the theory of his suit as not intending to affect pre-existing titles, but to ascertain and locate a boundary line which was unknown or lost, and as explaining and showing that if he occupied the land up to the fence or the line, as he alleged it, he did it because he believed it to be the true line, but without any intention to claim up to it if it should turn out by the suit to be beyond the line. It did so turn out, as the court established another line. By an affirmative answer to a leading question, the plaintiff is now made "to claim to own the land in controversy, whether it was covered by the patent or not." But claims of this sort, unless consistent with the acts of the parties and other circumstances of the case, are not very satisfactory proof to establish title by adverse possession to the lands covered by title of others.

Assuming that the plaintiff did occupy the land in question, his evidence, taken as a whole, judged in the light of surrounding facts, indicates that his possession or intrusion upon the land was by mistake, and in consequence of the confusion or uncertainty as to the true line, was unsuspected by him or the defendants, because he believed it to be the true line, but without any intention on his part to claim the title to any other land than was embraced within the boundary of his claim. It is not the case of one occupying land not embraced in his title, under a mistake as to the boundary, claiming it as his own for the requisite statutory period. All this becomes more apparent when his evidence is considered with reference to the other testimony and in the light of the surrounding facts. Nor is this all. The greatest diversity exists between the witnesses as to the location of the fence upon which adverse possession is predicated, no two of them fixing it with certainty in the same place. In fact, the evidence lacks that certainty and convincing proof necessary to establish adverse possession. Besides, we are of the opinion that plaintiff has no sufficient possession to maintain this suit; so that in any view the decree must be affirmed and suit dismissed.