[Argued April 3; decided April 24, 1894.]

## KANNE v. OTTY.

[S. C. 36 Pac. 537.]

1. BOUNDARIES — LATENT AMBIGUITY — PUBLIC LANDS — PAROL EVIDENCE. — Where there is an ambiguity in the descriptive words of a grant respecting the quantity, character, or duration of the estate conveyed, evidence of the intention of the parties is admissible to interpret it; and such an ambiguity exists where a boundary line of a government patent was not in fact surveyed on the line there indicated.

2. PUBLIC LANDS — INTENTION OF PARTIES. — The intention of the parties to a patent to land under section 5 of the act of congress approved September twenty-seventh, eighteen hundred and fifty, providing for granting to settlers one hundred and sixty acres of land, must be ascertained from the actual survey as originally made upon the land; and the description of the premises by courses and distances must yield to visible or ascertained movements.

3. EVIDENCE OF ADVERSE POSSESSION. — On an issue as to the location of a boundary line, plaintiff relied on the establishment of a county road on the boundary claimed by him, and the removal by his grantor of a fence thereto for about two thirds of the distance across the claim, so as to inclose part of the land in dispute, and the cultivation of the land so inclosed. There was no direct evidence that such grantor intended to claim the tract adversely, and it appeared that when a surveyor, after plaintiff purchased, discovered the claim did not contain the quantity of land described in the patent because it did not include the strip of land in dispute, the grantor paid, and plaintiff accepted, three hundred dollars in satisfaction of the deficiency and breach of warranty. *Held,* that adverse possession was not shown.

APPEAL from Clackamas: THOS. A. McBRIDE, Judge.

This is a suit by August C. and Wilhelmina Kanne against William and Agnes Otty to quiet title. The plaintiffs allege in their complaint that they are the

owners in fee and in possession of the William S. Buckley donation land claim in sections twenty-eight and thirty-three, township one south of range two east, in Clackamas County, and that the defendants unlawfully claim some interest in a portion of said claim, three chains in width and thirty-four and one half chains in length, extending across the east end thereof. The defendants, after denying the allegations of the complaint, allege that the disputed tract forms no part of the Buckley claim, but that it is a part of lot three, section twenty-eight, and of lot one, section thirty-three, in said township, joining the Buckley claim on the east, of which they are the owners in fee and in possession. The reply having put in issue the allegations of new matter contained in the answer, the cause was referred to Charles E. Runyon, Esq., to take and report the testimony, which having been done, the court found for the defendants, decreed that they were the owners and entitled to the possession of said tract, and allowed them their costs and disbursements, from which decree the plaintiffs appeal.

AFFIRMED.

*Mr. Greenbury W. Allen* (*Mr. John F. Caples* on the brief), for Appellant.

*Mr. A. S. Dresser* (*Mr. G. E. Hayes* on the brief), for Respondent.

Opinion by MR. JUSTICE MOORE.

The plaintiffs contend that the said Buckley claim is forty-six and one half chains in length and thirty-four and one half chains in width, containing one hundred and sixty and forty-three hundredths acres, while the defendants contend that the east boundary of said claim, as

originally surveyed, was located but forty-three and one half chains from the west boundary, and that the claim contains only one hundred and fifty and eight hundredths acres.    The plaintiffs, to support their contention, offered in evidence a certified copy of the original field notes of said Buckley claim, from which it appears that the survey was made November eighth, eighteen hundred and fifty-seven, by beginning at the post at the corner to sections twenty-eight, twenty-nine, thirty-two, and thirty-three in said township; thence running north on the west boundary fourteen and one half chains to the northwest corner; thence returning to the initial point, and running south on the west boundary twenty chains to the southwest corner; thence east on the southern boundary forty-six and one half chains, where a post was set for the southeast corner; thence north on the east boundary and at a point fifteen and seventy-five hundredths chains from the southeast corner the line passed through a fir thirty inches in diameter; at twenty chains it intersected the line between sections twenty-eight and thirty-three, four and twenty-four hundredths chains east of the quarter post, and at thirty-four and one half chains a post was set for the northeast corner, from which a fir twenty-four inches in diameter bears south sixty-two degrees east fifty-two hundredths chains, and a fir thirty-six inches in diameter bears south seventy-seven degrees west eighty-six hundredths chains; and thence west on the north boundary forty-six and one half chains to the northwest corner.    The United States patent to William S. Buckley, and the mesne conveyance of said donation claim to the plaintiffs, adopt the description of the premises given in the field notes.    The evidence shows that when said claim was originally surveyed, the east end was covered with timber and brush, which have since been entirely removed, leaving no witness trees to the southeast corner; that an old fence extended south

from a point forty-three and one half chains east of the
northwest corner of the claim, across the east end thereof,
to a point at the same distance east of the southwest cor-
ner; that the defendant William Otty, William Ryan, who
is plaintiffs' grantor, and others, petitioned the county
court of said county to establish a county road, which
was surveyed April twenty-ninth, eighteen hundred and
eighty-two, the line extending west along the south bound-
ary of said lot one, thirty-three and one half chains from
the southeast corner thereof, to a point forty-six and one
half chains east of the southwest corner of the Buckley
claim, and thence running north on what was supposed to
be the boundary line between said claim and defendants'
land; that after said road was located Ryan began at the
south end of the old fence, and moved about two thirds
of it east to the county road, making an angle at the
north end, as moved, connecting it with the remaining
third, which extends to the north boundary of the claim.
John Meldrum testified that, as county surveyor of
said county, he, at the request of Ryan, surveyed the
Buckley claim after the plaintiffs had acquired the legal
title thereto, by beginning at the initial point of the
original survey, and found the northwest and southwest
corners as originally located; that he ran east from the
southwest corner forty-six and one half chains, where
he set a stake at a point one and thirty hundredths
chains east of the angle stake on the county road; thence
north, and at the proper distance he tried to find the tree
described in the field notes, but was unable to do so; that
he saw a stump two or three rods out of line, but did not
consider it the one sought for; that he intersected the
line between sections 28 and 33 at a point six and seventy-
six hundredths chains east of the quarter post, which
he established, and at a point thirty-four and one half
chains from the stake set for the southeast corner, he

found it to be three and twenty-two hundredths chains
east of what he concludes to be the northeast corner of
said claim.    At this point he found both bearing trees
blown down, but corresponding in course and distance
with the field notes, and by chopping into them he found
surveyor's marks.  He also found a stone set there for
the northeast corner, which he recorded as such.    After
finding this corner he ran west on the north boundary,
and at forty-three and fifty-two hundredths chains he
arrived at the original northwest corner.    John Smart,
who lived on land adjoining the Buckley claim on the
south, testified that while assisting Ryan to plow the
fence row on the line between their claims he found, at
the south end of the old fence, a decayed hardwood cor-
ner stake about three or four inches square, and about
eighteen or twenty inches long, which he pulled up, and
found figures on it; that Ryan said it was a corner stake
and that he would put it up at the corner.    S. B. Millard
testified that he moved the old fence, and in doing so
discovered a hardwood stake driven in the ground at the
south end of it, which was pretty much decayed, and had
figures on it made by a surveyor's instrument.    Henry
Meldrum testified that at plaintiffs' request he made a
survey of the Buckley claim, and at a point forty-six and
one half chains east of the southwest corner, in the course
and distance given in the field notes, he found the roots
of a tree that would correspond to the original witness
tree to the southeast corner; that in running north from
this point, at about the proper distance, and within about
five feet from the line, he found the stump of a tree that
might correspond with the one mentioned in the field
notes, but, the tree having been cut, he could not be cer-
tain of its identity; that at thirty-four and one half chains
north of a stake set for the southeast corner he found a
tree approximately corresponding in course and distance

with the witness tree to the northeast corner, but there were no surveyor's marks upon it; that he saw witness trees to a point three and twenty-two hundredths chains west of the corner established by him for the northeast corner, and that they were in the proper course and distance given in the field notes for that corner. From this evidence it would appear that the northeast corner of said claim had been established to a demonstration by the discovery of the witness trees; and the fact that the old fence reached from this corner to the stake found on the south line is a strong circumstance tending to prove that it was built on the line of the original survey. The field notes also show that the east boundary intersected the line between sections 28 and 33 at a point four and twenty-four hundredths chains east of the quarter post; and while this would be seventy-four links east of the line as claimed by defendants, it would be two and twenty-six hundredths chains west of that claimed by plaintiff. Taking these facts and circumstances into consideration, the conclusion seems irresistible that the east boundary, as originally surveyed, was run forty-three and one half chains from that of the west, and not forty-six and one half chains, as given in the field notes.

1.   Where there is ambiguity in the descriptive words of a grant respecting the quantity, character, or duration of the estate conveyed, evidence of the intention of the parties at the time the instrument was executed is admissible in interpreting it: *Adams* v. *Frothingham,* 3 Mass. 352, 3 Am. Dec. 151; *Wheeler* v. *Randall,* 6 Met. 529; *Brannan* v. *Mesick,* 10 Cal. 106; *Mulford* v. *LeFranc,* 26 Cal. 111; *Jackson* v. *Beach,* 1 Johns. Cases, 399. In a controversy respecting a deed containing a description which referred to a boundary line, "as surveyed by Israel Johnson and Isaac Boynton," it was contended that the premises had never been surveyed by them. The court,

in construing the reference contained in the instrument, said: "If Johnson and Boynton never made any survey, there was a latent ambiguity in the deed": *Abbott* v. *Abbott*, 51 Me. 575. So, in the case at bar, if the east boundary, as described in the patent to Buckley, was not surveyed on the line there indicated, a latent ambiguity existed in respect to it, and evidence was admissible to prove its original location.

2. The plaintiffs contend that it was the intention of the government of the United States to grant, and of William S. Buckley to acquire, one hundred and sixty acres of land under the provisions of section 5 of the act of congress, approved September twenty-seventh, eighteen hundred and fifty, (9 U. S. Stat. 406,) and that this intention of the parties will control courses, distances, boundary lines, monuments, and quantity, while the defendants contend that the intention of the parties is to be ascertained by the boundaries established by the original survey. Section 2396, U. S. Revised Statutes, provides that "All the corners marked in the surveys returned by the surveyor-general shall be established as the proper corners of the sections or subdivisions of sections which they are intended to designate." In *Goodman* v. *Myrick*, 5 Or. 65, it was held that all claims surveyed under the act of congress, approved September twenty-seventh, eighteen hundred and fifty, were recognized as legal subdivisions, and that the true line was the one actually run upon the ground in the original survey of donation land claims. In *Vandusen* v. *Shively*, 22 Or. 64, 29 Pac. 76, which was a suit to establish the boundary lines of a donation land claim, BEAN, J., said: "The location of this line is a question of fact to be ascertained from the evidence. The courses and distances as given in the field notes are but descriptions which serve to assist in determining where the line was actually

run. But, where the line can be shown from the marks and blazes on the trees, or other natural monuments or calls, the courses and distances must yield to it. In cases of this kind, the object is to follow in the 'footsteps of the surveyor' as nearly as possible. No fixed or certain rules can be laid down by which questions of disputed boundaries can be settled, but each case must depend upon its own particular facts." The intention of the parties to the Buckley patent must be ascertained from the actual survey as originally made upon the ground, and the description of the premises by courses and distances must yield to visible or ascertained monuments erected as witnesses to limit the bounds of the tract conveyed.

3. It is also contended that the plaintiffs and their grantor have been in the open, notorious, and exclusive possession of the disputed tract, claiming ownership under color of title, for the statutory period, and that this adverse possession entitled them to a decree therefor. The evidence upon which they rely to support this contention is the establishment of the county road, the removal of the fence for about two thirds of the distance across the claim, and the cultivation of the land embraced in the tract enclosed by the removal of the fence. These acts by Ryan are not of themselves sufficient to prove an adverse holding; they are at best but circumstances from which an inference to that effect may be drawn. There is no direct evidence that he intended to claim the tract adversely. When John Meldrum, in making the survey of eighteen hundred and eighty-eight, discovered the claim did not contain the quantity of land described in the patent, Ryan paid, and the plaintiffs accepted, three hundred dollars in consequence of the deficiency, and agreed to relinquish any claim they might have against him upon his warranty. This is a circum-

stance tending to prove that Ryan was not holding or claiming to hold the tract adversely, and would seem to rebut the presumption created by his improvements. The decree is therefore affirmed.    AFFIRMED.