Argued January 7, affirmed February 17, rehearing denied March 16, 1920.

# SCHIFFMANN *v.* YOUMANS.*

### (187 Pac. 630.)

**Injunction—Equity will Enjoin Wrongful Cutting of Standing Timber Forming Principal Value of Property.**

1.   Equity will intervene to prevent the cutting of standing timber when such timber constitutes the principal value of the estate, for in the very nature of things an action for damages to recover the value of the timber cut, or treble damages, is an adequate remedy.

   [As to injunction to prevent injury to trees or timber, see note in 11 Ann. Cas. 456.]

**Injunction—Action to Enjoin Cutting of Timber may be Maintained Though Boundary Line was Disputed.**

2.   While a suit to enjoin a trespass cannot be used to determine the location of a disputed boundary, nevertheless a suit to enjoin the cutting of standing timber which was the principal value of an es'ate may be maintained where defendants made a dispute over the boundary the pretext for removing the timber.

**Boundaries—Sufficiency of Evidence to Establish.**

3.   In a suit to enjoin the cutting of timber, evidence *held* to establish the boundary as claimed by plaintiff and not to show defendants' title to the land in dispute.

**Adverse Possession—Piling of Brush to Stop Cattle not Such Possession as will Ripen into Adverse Title.**

4.   Though defendants piled brush and made a sort of a temporary fence to stop cattle, they cannot be deemed in possession of the land up to the fence which was a temporary structure, so that they would acquire an adverse title, as plaintiff could not have maintained ejectment against them on account of the construction of such fence.

**Boundaries—Monuments Control Courses and Distances.**

5.   Monuments will control courses and distances in construing a deed.

**Costs—Allowance on Appeal Denied in View of Oppressive Conduct.**

6.   Where plaintiff's conduct was oppressive and unneighborly, the appellate court may refuse to allow him costs and disbursements on appeal, even though affirming the decree in his favor.

---

*The question of injunction against trespass to cut timber is discussed in notes in 22 L. R. A. 233; 43 L. R. A. (N. S.) 262.

On right to injunction against cutting trees on or over boundary line, see note in 46 L. R. A. (N. S.) 5.                REPORTER.

From Tillamook: George R. Bagley, Judge.

Department 1.

This is a suit begun to enjoin the cutting and taking away of timber upon premises alleged to belong to plaintiff.

The complaint alleges that plaintiff is the owner of the S. E. ¼ of the S. W. ¼ of Sec. 6, T. 2 N., R. 9 W. in Tillamook County; that the same is timber land, covered with a heavy growth of valuable timber, and that the spruce timber thereon is of the value of $4,000; that on or about the —— day of January, 1918, the defendants, acting together and in pursuit of their partnership business, wrongfully and unlawfully entered upon the aforesaid lands of the plaintiff and began to cut and remove the merchantable timber growing and being thereon, and that defendants ever since have continued to conduct and carry on operations upon said lands, and in so doing the defendants have cut and removed a large quantity of said merchantable timber from said real property, the exact amount thereof the plaintiff is not able to state, but plaintiff is informed and believes, and therefore alleges, the amount of said timber so cut and removed is approximately 100,000 feet of spruce timber of the reasonable value of $2,000; that defendants are continuing to cut and remove timber from said premises without any license, permission, or authority so to do, and wrongfully and unlawfully threaten to continue to cut and remove timber therefrom, and unless they are restrained from so doing will continue to cut and remove said timber until they remove the whole thereof, all in denial of the plaintiff's right thereto and without plaintiff's consent or permission; that unless the defendants are restrained from doing the

acts aforesaid they will remove all of said timber, and the value of said lands will be thereby greatly diminished and the same will be rendered practically worthless; that, by the doing of the wrongful and unlawful acts herein mentioned, the defendants have rendered plaintiff's land less valuable, and plaintiff has been damaged by reason thereof, including the removal of said timber and the value thereof, in the sum of $2,500; and that the value of said lands consists principally in the value of the timber thereon, and the plaintiff has been, and by continuance of the aforesaid wrongful and unlawful acts of defendants will be, irreparably injured.

A general demurrer was interposed, which, being overruled, the defendants answered, denying, upon information and belief, plaintiff's ownership of the land described in the complaint, and generally denying all the allegations of the complaint.

For a separate defense it was alleged that Daniel Hickey, on or about the fifteenth day of June, 1892, procured a patent from the United States government for the N. E. quarter of the N. W. quarter, and lot 1 of section 7, and lots 6 and 7 in section 6, T. 2 N., R. 9 W., W. M., Tillamook County, Oregon, and immediately thereafter went into the open, notorious, exclusive and adverse possession of said property and the whole thereof, and continued in such open, notorious, exclusive and adverse possession of said property during all the time he owned said property; that thereafter, for a valuable consideration, he granted, bargained and sold to the defendant, Sarah E. Hickey, all his right, title and interest in and to said property, and every part thereof; that said defendant, Sarah E. Hickey, entered into the open, notorious, exclusive and adverse possession of said

95 Or.—33

property immediately upon the receipt of said convey-ance and has ever since been and now is in the open, notorious, exclusive and adverse possession of said property, claiming to own the same and the whole thereof, and the defendant, Sarah E. Hickey, and her grantor, Daniel Hickey, have been in the open, notorious, exclusive and adverse possession of said property, and the whole thereof, claiming to own the same for more than ten years last past, and the defendants, Youmans and Thomas, are the tenants of said Sarah E. Hickey, in possession of said property, holding the same as such tenants, and all the timber that said Youmans and Thomas have cut has been off from the land aforesaid and the plaintiff has no right, title or interest therein or any portion thereof; and that the plaintiff has not been in the possession of said property, or any portion thereof, for ten years last past.

Plaintiff replied and alleged, among other things, that the north line of section 7, township 2 north, range 9 west, W. M., which is the same as the south line of section 6 in said township and range, is an irregular line; that the quarter-section corner between said sections is located at a point 43.69 chains east and 24.72 chains south of the southwest corner of said section 6, so that the north boundary of the northwest quarter of said section 7, is a line described as beginning at the southwest corner of said section 6 —, being the northwest corner of said section 7 —, and running thence south 60° 30″ east, 50,20 chains, to the aforesaid quarter-section corner common to said sections 6 and 7; that the lands of plaintiff, described as the S. E. ¼ of S. W. ¼ of said section 6, are bounded on the south by the eastern part of the north line of said N. W. ¼ of said section 7; that plaintiff's said lands have a width east and west of 84 rods, and the lands of plaintiff, upon

which defendants have committed the acts complained of in the complaint herein, are those portions of plaintiff's said lands lying between the southern boundary thereof, and the easterly 84 rods of a line described as beginning at the southwest corner of said section 6, and running thence north, 89° 43'' east, 43.69 chains; and that plaintiff's said lands are, and at all the times mentioned in the pleadings herein, have been uninclosed and uninhabited, and not in the actual possession of any person other than plaintiff and those under whom he claims, save and except for the wrongful possession thereof during the present year, as alleged in the complaint herein.

Upon the trial the court found for the plaintiff generally, and found that the quarter-section corner on the line between sections 6 and 7, township 2 north, range 9 west, which is the southeast corner of the above-described parcel of land, is located at a point 43.69 chains east and 24.71 chains south of the southwest corner of said section 6, which southwest corner is the corner common to sections 6 and 7, township 2 north, range 9 west; that the south boundary of said land of plaintiff is formed by the last portion of a line which begins at the southwest corner of said section 6, and runs thence south, 60° 30'' east, 50.20 chains to said quarter-section corner; and that plaintiff's said lands have a due east and west width of 84 rods.

The court found against the defendants' plea of adverse possession, and that the value of the timber cut and removed was $578.26, and as conclusions of law, found that plaintiff was entitled to possession of the disputed strip; that defendants should be enjoined from entering upon or cutting the timber thereon; and that plaintiff should recover from defendants the sum of $578.26, the value of timber already cut and re-

moved, and decreed accordingly, from which decree defendants appeal.                         AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. W. Y. Masters.*

For respondent there was a brief and an oral argument by *Mr. H. T. Botts.*

McBRIDE, C. J.—1. Whatever may be the rule in other jurisdictions, the case of *Roots* v. *Boring Junction Lbr. Co.,* 50 Or. 298 (92 Pac. 811, 94 Pac. 182), is conclusive in this state in favor of the doctrine that equity will intervene to prevent the cutting of standing timber when such timber constitutes the principal value of the estate.

This is true in this state, not only for the reasons given in that opinion, but for another reason, namely: the difficulty of estimating the damages after logging timber has been cut and removed from the land. It is not possible, after timber has been cut and converted into sawlogs and removed, to ascertain accurately, by an inspection of the stumps and tops left upon the ground, the lumber contents of the logs removed; and the owner of the land is more or less at the mercy of the records and statements of the trespasser as to these facts. The statutes have attempted to obviate this difficulty, by providing for the triple damages from a willful trespasser, but in cases of casual trespass, and the present case may well be classed in that category, no such damages are allowed and the remedy at law is inadequate.

2. It is urged that a suit to restrain a trespass cannot be used to determine the location of a disputed boundary line, and this contention is, true where there

is no other element in the case upon which equitable jurisdiction may be predicated, as in *Hume* v. *Burns,* 50 Or. 124 (90 Pac. 1000). But where, as in this case, an alleged uncertain boundary line is made a pretext by the defendants for destroying the substance of the estate, an injured party is not required to bring one suit to have the original boundary line retraced and established and wait until that is decided, before bringing suit to restrain a trespass which is destroying the substance and value of his estate.

As shown by *Love* v. *Morrill,* 19 Or. 545 (24 Pac. 916), and *Andrews* v. *Brown,* 56 Or. 253 (108 Pac. 184), a suit to determine a disputed boundary is confined in this state to very narrow limits, and is not sufficiently expansive to cover such equities as those invoked in the case at bar.

It may be remarked that the gist of this suit is to prevent defendants from cutting down and removing the timber on that parcel of land in dispute between the parties. The location of the boundary becomes important incidentally, because if the line is where the plaintiff claims, the defendants are trespassers, while if their contention as to its location is valid, they are only exercising the right to use their own property. Thus, while the correct location of the boundary line between the two tracts is not the primary object of the suit, it becomes incidentally a controlling factor in its determination.

3, 4. The testimony as to the location of the line between sections 6 and 7, which forms a common boundary between plaintiff and defendant Hickey, is somewhat contradictory. Neither party has produced testimony that assures us that the line can be traced by blazes or other marks made at the time the government survey was run, and the maps offered in evi-

dence are so incomplete as to render the task of identifying stakes and lines indicated in the testimony, very difficult. So much so that the writer has been compelled to compile from the testimony, as best he could, a map of the various locations therein referred to; but, after a careful examination of the testimony, we are fully satisfied that the monument set by the government surveyor for the southeast corner of section 6 and the northeast corner of section 7, was placed at a considerable distance south of where an east and west line running between sections 6 and 7 would locate it, thus increasing the area of section 6 at the expense of section 7.

5. The true boundary of sections 6 and 7, so far as the tract in dispute is concerned, is, therefore, a straight line between the quarter-section corner found and identified by plaintiff's witness Sappington, and the southwest corner of section 6, the location of which is conceded by all parties. This places the line between plaintiff and defendant Hickey as fixed by the court, and as monuments control courses and distances we are forced to agree with that finding.

We think the defendant's evidence of adverse possession is not sufficient to constitute a defense on that ground. Hickey testified that he built a fence on the east line of the northwest quarter of section 6, the north end of which terminated at a point where he now claims the quarter post was located, and that at the latter point he erected a pair of bars. The fence seems to have been mostly constructed of brush and logs with some rails and was intended, he says, to prevent the cattle of his neighbors east of him from straying over on his premises and to prevent his own cattle from straying to the eastward. This fence, he says, was in existence for ten or fifteen years, but

has now disappeared with the exception of a few strips nailed on a supposed witness tree, which indicate that a pair of bars once existed there.

The fence was evidently a temporary affair, was not on any line, or supposed line, between plaintiff and defendant and inclosed no land. There has never been a time when plaintiff could have maintained ejectment for possession of the disputed strip by reason of the erection of this fence. Neither can the occupancy of part of the land embraced in his patent avail him here, because the field-notes call for monuments, and these calls being imported into the patent the holding must be construed with reference to the monuments as they actually existed on the ground, rather than to the courses and distances therein mentioned.

6. This leads to an affirmance of the decree of the Circuit Court. It is fair to say that we do this only because the law compels us to adjudicate the legal rather than the moral rights of the litigants. We award plaintiff the timber on the disputed strip because the law awards it to him, and we have no discretion to set aside the law, but, considered from the standpoint of the Golden Rule, plaintiff's conduct is oppressive and unneighborly and does not meet with our approbation.

There is one matter in which we have discretion, and that is in the matter of awarding him costs, and while we affirm the decree as to the injunction and the damages allowed by the Circuit Court, the plaintiff will not recover any costs or disbursements on this appeal.      AFFIRMED.   REHEARING DENIED.

BURNETT, BENSON and HARRIS, JJ., concur.