Argued January 28, affirmed February 23, rehearing denied March
22, 1921.

# HICKEY *v.* DANIEL.

### (195 Pac. 812.)

**Boundaries—Evidence Held to Take to Jury Question Whether Line
   Followed Direction Stated by Field-notes.**

1. In ejectment to determine a disputed boundary, evidence on
behalf of defendant tending to establish the original monument at
the disputed corner, *held* sufficient to take the question to the jury,
though the line from an admitted corner to that monument varied
19 degrees from the east and west line called for by the field-notes.

**Adverse Possession—Possession of Tract Held not Possession of Strip
   Beyond Disputed Boundary.**

2. Where there was a dispute as to the boundary between the
government subdivisions owned by the respective parties, and there
had been only a temporary irregular fence between the tracts, pos-
session by plaintiff with intention to claim only the subdivision
owned by him is not adverse possession of the disputed strip beyond
the true boundary line.

**Boundaries—Monuments Control Courses and Distances.**

3. In establishing a boundary line, monuments control courses
and distances.

**Boundaries—Lines Run Straight Between Established Corners.**

4. Under Pierce's U. S. Code of 1910, Section 10,144 (U. S. Comp.
Stats., § 4804), boundary lines which have been actually run and
marked shall be ascertained by running straight lines from the es-
tablished corners to the opposite corresponding corners.

**Trial—Requested Instruction as to Proof of Actual Location of Line
   on the Ground Held Covered.**

5. In ejectment to determine a disputed boundary line, where
court instructed that party having affirmative had burden, and that,
if plaintiff failed to satisfy jury by a preponderance of the evidence
that she is the owner of the particular tract of land, verdict should
be for defendant, it was not error to refuse an instruction requested
by plaintiff that evidence that the actual location of the line on the
ground did not conform to the requirements of law must be clear
and satisfactory.

**Trial—Request Plaintiff had Possession of Disputed Strip Held Prop-
   erly Refused as Usurping Functions of Jury.**

6. In ejectment to determine a disputed boundary, where there
was evidence that the possession by plaintiff of the government
subdivision owned by him extended only to the limits of that sub-

2. Possession by mistake of one intending to claim only to true
boundary as adverse possession, see notes in 15 **Ann. Cas.** 827; Ann.
Cas. 1912A, 450.

division, and did not include the strip in controversy, if that was beyond the true boundary of the subdivision, an instruction requested by plaintiff stating that he had been in possession of the tract in controversy under color of title was properly refused as determining the issue and usurping the functions of the jury.

**Trial—Shift of Duty to Produce Evidence Does not Authorize Instruction Burden of Proof Shifted to Defendant.**

7.   Though plaintiff may establish a *prima facie* case in suit to determine a boundary so as to require defendant to produce evidence to avoid a directed verdict, that does not authorize the court to charge that the burden of proof had shifted to defendant, so that requested instruction that the burden was on defendant to prove that the surveyor did not set the disputed monument at the proper distance from an admitted corner was properly refused.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.

. Plaintiff, Sarah Hickey, brought an action in ejectment against defendant, Clay Daniel, for the possession of a triangular piece of land claimed by plaintiff as a part of lot 6, or the N. W. ¼ of the S. W. ¼ of section 6, Tp. 2 N., R. 9 W., W. M. The tract is in the possession of defendant, and is claimed by him as a part of lot 5, or the S. W. ¼ of the N. W. ¼ of section 6. Upon the trial of the cause before a jury. a verdict was rendered in favor of defendant. Plaintiff appeals from a judgment thereon.

Plaintiff alleges, in effect, that she is the owner of lot 6, and that the disputed tract is a part thereof. The defendant alleges that he is the owner of lot 5, and that the tract of land in dispute is a part thereof. The court instructed the jury to the purport that the party having the affirmative of the issue has the burden of proving that affirmative, and that if the plaintiff had failed to satisfy the jury by a preponderance of the testimony that she is the owner of the particular tract of land, their verdict should be for the defendant.

According to the plat of this land in the government office, the dividing line between lots 5 and 6 runs approximately east and west. It is claimed by the defendant that the boundary line between these two subdivisions runs south 71 degrees east, and in support of this claim the defendant produced evidence showing the location of the quarter-section corner on the east side of section 6 to be located in that direction from the quarter-section corner on the west side of the section, which is not in dispute.

The evidence shows that Tp. 6 N., range 10 W., was surveyed about ten years before range 9. The survey of range 9 ties to the section corners established for range 10 along the range line. No new corners were set on that line. The evidence of the actual location of the southeast corner of section 6 was contradictory. No evidence was offered by the plaintiff to identify any monument or witness trees called for by the field-notes for the southeast corner of section 6, which is the common corner to section 5, 6, 7, and 8, showing the location to be other than is claimed by the defendant.

The plaintiff introduced the field-notes of the government survey showing the location of the line as claimed by him, but offered no evidence as to the actual location of the quarter-section corner on the east side of section 6. Plaintiff did, however, produce evidence as to what was claimed to be the location of the section corner at the southeast corner of section 6, this claimed corner being located some 26 chains north of the northeast corner of section 6 as claimed by defendant.

The defendant produced evidence tending to show the location of the quarter-section corner called for by the field-notes on the east side of section 6, which

corresponded as to distance practically with the calls of the survey, and corresponded with landmarks mentioned in the field-notes, and also carried the witness trees called for by the field-notes.

Plaintiff's husband entered lots 6 and 7 in section 6 with other lands in section 7, in 1892. He built his home on one of the subdivisions, and he and his wife by themselves and their tenants have been living on the land ever since. He conveyed the land to his wife on August 9, 1912. The land originally was covered with timber and brush. Mr. Hickey cleared a portion of his farm, but did not clear along the north line until within the last six or seven years. When the defendant entered his land Hickey pointed out to him what he claimed would be the line between their lands, and the defendant cleared the land up to this supposed line. Finally when a survey was being made in that locality a surveyor informed defendant that the east and west line between plaintiff's and defendant's land ran farther south than Hickey had indicated. The defendant then cleared up to that line and, as stated by the witnesses, some time from the year 1900 to the year 1910, he constructed a fence along this line. The fence was placed several feet over on his own property except on the east end where by mistake it ran farther south. As the defendant asserts, Hickey refused to join with him in building the fence. Prior to this time there had been an irregular temporary brush fence in the vicinity of this line; the exact location of the fence being in dispute. Hickey testified that it was built by him to the north of where he claimed the line to be. Daniel and others testified that the brush fence was located in part to the south of where the line is now claimed by the defendant. Until recently neither of the parties made any effort

to locate the quarter-section corner on the east side of the section, nor to ascertain the exact location of the boundary line between them, but evidently supposed the line ran east and west, or nearly so. At the close of the case the plaintiff requested the court to instruct the jury to return a verdict in his favor, and the refusal of this request by the court is assigned as error.                                        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. W. Y. Masters.*

For respondent there was a brief and an oral argument by *Mr. H. T. Botts.*

BEAN, J.—1. An examination of the record discloses that there was no error in refusing to grant the motion of plaintiff for a directed verdict. The real question at issue was whether the land in dispute was a part of lot 5 or a part of lot 6.

The plaintiff claims that the field-notes and official plat of plaintiff's land indicate that the boundary line between the land of plaintiff and defendant runs due east and west; and that, while plaintiff never took actual possession of the land in dispute until within the last few years, she and her predecessors being in the actual possession of a part of the land covered by patent from the United States, this actual possession drew to them the constructive possession of the land up to and including the tract in dispute regardless of any testimony offered as to the actual location upon the ground of the opposite quarter-section corner, a straight line between which would constitute the true boundary between the subdivisions. The record discloses that there was a dispute or difference between the witnesses as to the location of the

99 Or.—34

section corner at the southeast corner of section 6, the section in which the land in dispute is located; that, while the field-notes of the survey indicate that the boundary line between the property would run practically east and west, the monuments established on the ground and the lines actually run by the surveyor do not coincide with the field-notes, but indicate that the line, starting from the west, would run to the south of an east and west line. It was therefore proper to submit the disputed question to the jury.

2. The plaintiff maintains that the east and west line had been recognized by the parties as the dividing line between their lands for thirty years, and upon that evidence the request for a directed verdict in her favor was made. The testimony tended to show that there had been no line established, and that what Hickey actually claimed was lot 6. The brush fence that served to keep the stock on the different tracts separated, being irregular, it does not appear that Hickey claimed any other land than that embraced in lot 6, or to the true boundary of the lot.

3. It is the rule of law that in establishing a boundary line monuments control courses and distances: Section 878, Or. L.; Section 3437, Or. L; *Goodman* v. *Myrick,* 5 Or. 65; *Van Dusen* v. *Shiveley,* 22 Or. 64 (29 Pac. 76); *Kanne* v. *Otty,* 25 Or. 537 (36 Pac. 537); *Albert* v. *Salem,* 39 Or. 474 (65 Pac. 1068, 66 Pac. 233); *Schmidtke* v. *Keller,* 44 Or. 23 (73 Pac. 332, 74 Pac. 222).

4. The law requires that boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners to the opposite corresponding corners: Pierce's U. S. Code 1910, § 10,144); *Schiffmann* v. *Youmans,* 95 Or. 511, 518 (187 Pac. 630). The present case arises out

of the same state of facts as those involved in the latter case, which was in equity. It transpires that the jury came to the same conclusion as to the facts that the court did in *Schiffmann* v. *Youmans*. The case turns on the question we have already referred to.

5. The plaintiff also claims that the court erred in refusing to give an instruction to the effect that the evidence of the actual location of the line upon the ground does not conform to the requirements of law, must be clear and satisfactory. The court, by the charge, to which we have alluded to a portion, sufficiently informed the jury as to the *quantum* of proof. The issues were all clearly defined by the charge, and the question as to whether the tract in dispute was a part of lot 6 or a part of lot 5 was fairly presented to the jury, in accordance with the authorities above cited.

6. Error is claimed in the refusal of the court to give an instruction requested by plaintiff to the effect that Daniel Hickey entered into possession of the land in controversy under color of title, and his possession of any portion of said land would extend his possession to the boundaries of his patent. If the disputed tract was not a portion of lot 6, then the court could not tell the jury that Hickey entered into possession of the land in controversy. His possession as claimed by plaintiff might extend to the limits of lot 6. The matter for determination in this case is whether or not the property in controversy was a part of lot 6 or lot 5. This requested instruction, if it had been given by the court, would have determined the issue and usurped the functions of the jury. The disputed question in regard to the adverse possession

of plaintiff for the statutory period was plainly submitted to and passed úpon by the jury.

7. It is urged by plaintiff that the court should have instructed the jury that the burden was on the defendant to prove that the "surveyor did not set this quarter-section post 40.60 chains from the northeast corner of the section, but set it some 26 chains farther south, or 66.60 chains from the corner." This matter is explained in *Askay* v. *Maloney,* 92 Or. 566, 575 (179 Pac. 899, 902), in an opinion of this court by Mr. Justice BURNETT in the following language:

"In connection with the duty of producing evidence which may devolve upon one or the other party by turns during the progress of the trial, the court, in deciding a motion for nonsuit or for a directed verdict, has authority to rule that the one or the other party has or has not made a sufficient case to require his opponent to proceed, but it does not give to the judge the right or duty to say to the jury that the party holding the affirmative of the issue has sustained the burden of proof at any stage of the case and that it then shifts to the other party."

The position of the plaintiff is not in harmony with this announcement.

The rule in regard to monuments indicating a boundary, and the actual survey made upon the ground, was followed in this case. It may be that the rule in certain cases will work a hardship. As this township was surveyed after the adjoining one, it may be there were incongruities in the survey. The disputed questions have been set at rest by the verdict of the jury. We find no reversible error in the record.

The judgment of the lower court is therefore affirmed.                    AFFIRMED.    REHEARING DENIED.

BURNETT, C. J., and JOHNS and BROWN, JJ., concur.